ROONEY *v.* SECOND AVENUE RAILROAD COMPANY.

The Code has not abolished the lien of an attorney for his costs upon a judgment recovered by him.

Such lien is not measured by the taxable costs, but covers any portion of the damages which may have been stipulated as the compensation for the attorney's services.

APPEAL from an order of the Superior Court of the city of New York, vacating the satisfaction of a judgment entered on the record by the plaintiff, unless the defendant should, within five days, pay to the plaintiff's attorney $379.17, the amount of the taxed costs included in the judgment, with $10 costs of the motion. The facts are sufficiently stated in the following opinion. The case was submitted on printed points by the attorney for the plaintiff, who was respondent, and was argued by

*John H. Reynolds,* for the appellant.

HARRIS, J. It had been agreed between the plaintiff and his attorney, that the latter should commence and prosecute this action to its final termination, without fee and at his own risk, and upon his final success he should receive for his services one-half the recovery, and if the amount should not exceed $600 he was also to have the taxable costs. The judgment recovered, including costs, was $1,179.17. Of this amount, according to the terms of the agreement, the attorney became entitled to $589.58. The plaintiff gave the attorney an irrevocable power of attorney to receive the amount of the recovery. Of these facts the defendants had sufficient notice.

Under these circumstances the defendants negotiated with the plaintiff for a compromise, at their peril. Before the Code, nothing was better settled than that the attorney had

a lien upon the judgment recovered by him for his services. The legal measure of those services was the taxable costs, so that it always happened that the extent of the lien was equal to the costs recovered in the action. To that extent the attorney was regarded as the equitable assignee of the judgment. It was said by Lord KENYON, in *Read* v. *Dupper* (6 *Term R.*, 361), that it had been settled long ago, that a party should not run away with the fruits of the cause without satisfying the legal demands of his attorney, by whose industry and expense those fruits were obtained. (*Martin* v. *Hawks*, 15 *John.*, 405, *and cases there cited; Willkins* v. *Batterman*, 4 *Barb.*, 47; *Sweet* v. *Bartlett*, 4 *Sand.*, 661; 2 *Kent's Com.*, 641.) "I am inclined to hold," says Lord MANSFIELD, in *Welsh* v. *Hole* (1 *Doug.*, 238), "that if the attorney give notice to the defendant not to pay till his bill shall be discharged, a payment by the defendant after such notice would be in his own wrong, and like paying a debt which has been assigned after notice."

The question now to be determined is, whether, by anything that the legislature has done, in enacting the Code, this equitable right of the attorney, so long recognized and protected, has been destroyed. The principle upon which the right has been sustained is certainly unaffected by the Code. As in other cases of lien, the attorney is protected, because it is by his labor and skill that the judgment has been recovered. The judgment being under the control of the court, and the parties within its jurisdiction, it will see that no injustice is done to its own officers. There is no less reason for the exercise of this power now than before the adoption of the Code.

Under any system of proceedings the recovery of costs is a statutory right. By way of indemnity for his expenses, it has been thought fit to allow the prevailing party to recover, in addition to his debt or damages, certain prescribed allowances. These are as much a part of the recovery as the verdict itself. They become a part of th

judgment. It is one entire thing. But, because the judgment has only been recovered through the instrumentality of the attorney, and his money and labor and talents have been expended for that purpose, courts have declared that he shall have a lien upon it to the extent of his claim against his client. The lien is not more upon one part of the judgment than another. It is upon the whole judgment. True, it was equal to the costs embraced in the judgment, but this was only because the legislature had thought fit to fix this amount as the limit of the compensation to which the attorney should be entitled.

All that the Code has done in this respect is, to remove this restriction. The party recovers costs as before, but the amount of compensation which the attorney shall receive is no longer limited. The principle upon which his lien upon the judgment has been maintained is still the same. He still conducts the suit as before. His labor and skill and money still enter into the judgment as before. But now he may agree with his client, as he could not before, how much he shall receive for his services. In other words, the attorney and his employer may fix beforehand the amount for which he shall have a lien upon the judgment when recovered. Why, when this is honestly and legally done, should the defendant in the judgment be allowed to intervene, and by a settlement with the party, with full knowledge of the claim of the attorney, aid him in depriving the attorney of what is justly due him? This subject is discussed with very great ability by the present presiding judge of the New York Common Pleas, in *Ward* v. *Syme* {9 *How. Pr. R.*, 16). I concur entirely in the views he has there so well expressed. The only operation of the Code, in respect to costs is, to substitute a new fee bill in the place of that which had before existed, and to leave the attorney free to agree with his client for a greater or less amount than that which he may recover, according to circumstances. The lien of the attorney, upon the judgment he recovers,

is unaffected by the change. That right stands now as it did before. It is a valid and established right to receive, out of the moneys to be collected upon the judgment, the amount due him from his client for his services and expenses in obtaining it. In the absence of any agreement on the subject, I suppose the sum recovered by the party as an indemnity for his expenses would be the measure of compensation allowed to the attorney. This, then, would be the extent of his lien. But where there has been an agreement for more or less than that sum, the amount which, by agreement, he is entitled to receive will determine the extent of his lien. It is still true, that the attorney is to be regarded as the equitable assignee of the judgment to the extent of his claim for services in the action. (*Sherwood v. The Buffalo and New York City Railroad Company,* 12 *How.,* 136 ; *Haight* v. *Holcomb,* 16 *id.,* 160, 173.)

The order from which this appeal is taken provides for the payment of $379.17 only. This is the amount of the costs included in the judgment. The attorney should have been allowed to collect the whole amount due him for his services in obtaining the judgment; but as the appeal is by the defendant, the order, in this respect, cannot be modified. It should therefore be affirmed, with costs.

COMSTOCK, J. It is not claimed that the order appealed from is erroneous, provided the attorney for the plaintiff had a lien on the judgment for his costs. The defendants had sufficient notice of the lien, if it existed, to protect him against a settlement with his client. The question, therefore, is whether the Code of Procedure has abrogated the lien of an attorney for his costs. Section 303 declares that all statutes establishing or regulating the costs " and fees of attorneys, solicitors, &c., in civil actions, and all existing rules and provisions of law restricting or controlling the right of a party to agree with an attorney, &c., for his compensation are repealed, and that the measure of such com·

pensation shall be left to the agreement, express or implied of the parties." "But," the section further declares, "there may be allowed to the prevailing party, upon the judgment, certain sums by way of indemnity for his expenses in the action, which allowances are in this act termed costs." Sections 304, 305 and 306 prescribe the cases in which costs may be recovered, and section 307 specifies the particular rates, being specific sums supposed to be earned in the different stages of a cause.

In this legislation I discover nothing which deprives an attorney of his lien for costs. Previous statutes establishing or regulating costs and fees are repealed, but in their place a new statute is enacted, prescribing different rates of compensation, and adjusted upon a different principle. But the legislation of this state has frequently undergone changes of the same kind, and relating to the same subject, without impairing the lien of the attorney. It is said that costs are now allowed to the party as " an indemnity for his expenses in the action." But this was always the essential nature of costs. The prevailing party recovered them of his adversary, and they became a part of his judgment. They were always, in substance, an indemnity for expenses; although, before the Code, they were taxed under the name of attorney's and solicitor's fees. The name given to this indemnity is of no account. The fee bill is abolished, but that was never the foundation of the lien. It might regulate the amount of an attorney's compensation, but he was entitled to a lien as against his client, because his labor and skill contributed to the judgment. On the same principle he had a lien on his client's papers for services, where there was no suit or judgment against another party; and this principle does not differ essentially from that which confers a lien in a variety of the industrial pursuits of mankind. Lord KENYON said (*Read* v. *Dupper*, 6 *Term R.*, 362), " the principle was decided long ago, namely, that a party should not run away with the fruits of a cause without satisfying the legal

Rooney *v.* Second Avenue Railroad Company.

demands of his attorney, by whose industry, and in many instances, at whose expense, those fruits are obtained."

Section 303 of the Code, above quoted, abrogates all rules and provisions of law which might restrain an attorney in agreeing with his client for the measure or mode of his compensation, and it leaves such compensation to the agreement of the parties, express or implied. What was before not only illegal but disreputable is now lawful, if not respectable. But this provision can have no influence upon the present question. If there is a special agreement that will take the place of the preëxisting statutory rates, I am not able to see how this affects the attorney's lien, where no special security is taken, and there is no assignment of the cause of action or of a part of it. If there be no such agreement, then the implied undertaking of the client will be, to pay either what the services of his attorney are reasonably worth, or else the particular sums which the Code specifies, in the different periods of the litigation. It is not important now to determine what may be the implied agreement of the client with his attorney. In either of these aspects there is no reason for questioning the lien. The attorney contributes his services and skill in the management of his client's case. The result is a judgment with costs, and the attorney has an interest in the judgment either to the amount of those costs, or for some other amount which he is entitled to claim as the measure of his compensation. The principle which lies at the foundation of this lien is by no means an anomalous one, and I do not perceive that it is inconsistent with any of the provisions of the Code. The order should be affirmed.

All the judges concurring,

Order affirmed.