## MASTER COMMISSIONER—FEES AND COSTS—CREDITOR'S BILL.

[Scioto Circuit Court, November, 1890.]

Clark, Cherrington and Russell, JJ.

† TIMMONDS, ADMR., v. WHEELER ET AL.

**1. A MASTER COMMISSIONER'S FEES ARE PART OF THE COSTS OF THE CASE.**

Where the matter in controversy in a court of equity has been referred to a special master commissioner, it has always been the practice to tax his fees and costs in the case.

**2. POWER OF COURTS OF EQUITY TO TAX COSTS.**

Courts of equity have always recognized the right and exercised the power, when funds derived from litigation are brought into court, to order the fees and costs of their officers paid out of the funds realized by their exertions, before making destribution thereof to the litigant or litigants entitled thereto.

**3. EFFECT OF FILING REPORT BY THE MASTER BEFORE HIS FEES ARE PAID.**

Where the Master Commissioner files his report before his fees are paid, he does not, by so filing it, waive his right to invoke the power of the court of equity to order it paid out of the funds in court, nor does he by such action, elect to look to the personal responsibility of the party against whom the court may, in its discretion, on the final determination of the case tax such costs.

**4. POWER OF A COURT OF EQUITY IN MARSHALING LIENS.**

A court of equity in marshaling liens may compel a party who has two funds, to resort to the one on which the others have and can assert no claim, but this power will only be exercised by the court, when it will work no injustice to any party connected with the litigation.

**5. FEES OF SPECIAL MASTER CONSTITUTE A PRIOR LIEN ON FUNDS REALIZED BY HIS SERVICES.**

A judgment creditor of an insolvent debtor, who has in a suit in equity, recovered a judgment for money against the adverse party—part of the costs of which suit is taxed against such insolvent debtor and remains unpaid—cannot, when the proceeds of such judgment have been paid in court, by filing a creditor's bill under section 5464 Revised Statutes, subject such funds to the payment of his judgment claim to the exclusion of the equitable claim of a special master commissioner against such funds, for fees, for services rendered as master in the suit in which such judgment was rendered and the funds realized.

APPEAL from the Court of Common Pleas of Scioto county.

CHERRINGTON, J.

This action is a petition in equity, commonly called a creditor's bill, under section 5464, Revised Statutes, by the plaintiff, to subject to the payment of a judgment for $1,810.05, rendered in his favor against the defendant, William H. Wheeler, and one David M. Richardson, the proceeds of a certain judgment for $393.76, rendered in another suit in favor of said Wheeler against one William H. McCurdy.

The facts in the case, as disclosed by the pleadings and evidence, are as follows:

In 1877, William H. Wheeler filed a petition in equity in the common pleas court of Scioto county against William H. McCurdy, alleging that they had been partners in the mercantile and contracting business; that a large amount of money was due him by virtue of such partnership, and praying for an accounting.

The case was referred to a master, and a large amount of testimony

†Affirmed by Supreme Court; unreported, 52 O. S., 641.

5  C. C.    40

was taken, and a report made, finding some $800 due from McCurdy to Wheeler. This report was confirmed by the common pleas court, and the case was appealed to the district court by both of the parties to the action. When the circuit court was created and the district court abolished, Wheeler perfected his appeal by giving a new bond; McCurdy did not. The report was set aside by the circuit court, and the case referred to William B. Grice, the present master. More testimony was taken, and a report made finding some $300 due from Wheeler to McCurdy. This report was set aside by the circuit court, and the case was referred back to Mr. Grice. More testimony was taken, and the present report was made by the master, reversing his former judgment, and finding that there was $393.76 due from McCurdy to Wheeler. This report was confirmed by this court March 21, 1889, and judgment rendered thereon in favor of Wheeler against McCurdy for that amount; and in the same decree Wheeler was ordered and adjudged to pay one-third of the costs in the case, and McCurdy two-thirds.

McCurdy thereupon gave notice of his intention to, and did, file a motion to re-tax the costs, under section 5237, Revised Statutes, claiming that because the plaintiff did not recover as large a sum as he did in the court below, he should, under the provisions of said section, pay all the costs made in the circuit court. The motion was subsequently heard by the court, and the parties ordered and adjudged, under section 5351, Revised Statutes, each to pay one-half the costs.

When judgment was rendered March 21, 1889, the plaintiff had an execution on his judgment against Wheeler and Richardson in the hands of the sheriff, and a demand was made on McCurdy to pay the $393.76 over to him, under section 5482, Revised Statutes. This he refused to do, and on the same day, the petition in this case was filed. Mr. McCurdy thereupon paid the money into court. There remained at that time, due Mr. Grice, special master commissioner, on his fees as such Master, the sum of $200, from William H. Wheeler.

On the trial of the case in the common pleas court, it was conceded by all the parties that this $200 due Grice should be first paid out of the funds in court.

On April 18, 1889, John W. Overturf and N. W. Evans were made parties defendant in the court of common pleas, and their appearance entered. They both had equitable assignments of the judgment prior to the filing of the Timmonds petition; but as the assignment of Mr. Evans was prior to that of Mr. Overturf, and the equities of Mr. Grice conceded to be superior to the others, there was nothing left to which Mr. Overturf's assignment could attach, and he filed no answer. Mr. Grice was therefore not made a party defendant in the common pleas, and the contest was between Mr. Evans and Mr. Timmonds. The court made an order only as to the $143.76 balance of the judgment remaining after the payment of Mr. Grice's fees.

Timmonds thereupon appealed the case to this court, and when the claim was made for the first time that he had, by virtue of his creditor's bill, a lien and claim prior and superior to that of Grice, the latter was made a party defendant to the action in this court, and filed his answer there November 8, 1890, alleging that at and before the filing of plaintiff's petition, there was due him for fees, as special master commissioner, in the case of *Wheeler* v. *McCurdy*, the sum of $300, which is a part of the costs in the case, and that at the time of the filing of plaintiff's petition, $200 of that amount was due and payable to him therein from the de-

fendant in this action, William H. Wheeler; that said Wheeler was then, and is now, insolvent, and has no other means but the proceeds of said judgment paid into court by McCurdy, out of which said sum can be made, and that in equity, he is entitled to have the sum of $200 paid out of the funds in court, realized from the judgment of Wheeler against McCurdy, and praying the court to so adjudge.

The defendant, William H. Wheeler, also filed an answer in the case, denying that at the commencement of this suit, he had any interest whatever in said judgment rendered in his favor against the said William H. McCurdy, and averring that there was yet due William B. Grice, special master commissioner, as fees allowed him by the court, for services rendered in said case, the sum of $200, which should be paid out of the said judgment, and that there is a balance of $250 due from him to the said N. W. Evans, as attorney fees, for services rendered in said case, and asking that after the payment of the $200 due Grice, the balance be paid to N. W. Evans on his claim for attorney fees, and that the petition of the plaintiff be dismissed at his costs.

From the pleadings it appears that both David M. Richardson and William H. Wheeler are insolvent, and nothing can be made of them by execution.

It is now conceded by all the parties that N. W. Evans had an equitable assignment of this judgment before the plaintiff herein filed his petition, to the extent of $250, and that his claim is prior and superior to that of the plaintiff and William B. Grice. It is also conceded by counsel for Mr. Grice that Mr. Wheeler has paid, or secured to be paid, the remaining $56.24 due him, so we have only to deal with the $143.76 balance remaining after the payment of Mr. Evans' claim.

The question presented in this case for the determination of the court, under the pleadings and the evidence, is simply this : Can a judgment creditor of an insolvent debtor, who has, in a suit in equity, recovered a judgment against another party—a part of the costs of which case is taxed against the insolvent debtor and remains unpaid—when the proceeds of said judgment have been paid into court, by filing a creditor's bill under section 5464, appropriate such funds to the payment of his judgment, and prevent the court from applying the same to the payment of such unpaid costs, cut the officers out of the fees due them for services rendered in the prosecution of the case in which such judgment has been rendered and such funds realized, and leave them to make their costs as best they can out of the insolvent debtor?

It is claimed on behalf of the plaintiff:

*First*—That the $200 due Grice for fees as master commissioner are not costs that can be taxed to or ordered paid out of the funds; that he could have refused to file his report until his fees were paid, and that, having filed his report without insisting upon payment, he waived his right to have such costs taxed against the funds, and elected to look therefor to the personal responsibility of Mr. Wheeler or the sureties on the appeal bond.

*Second*—That the only means by which costs can be collected in this state is by virtue of the provisions of sections 1318, 1319, 1320, 1321, 1322, 1323 and 1324 of the Revised Statutes.

*Third*—That if he is mistaken as to the first and second propositions, as Mr. Grice has two funds out of which he can make his claim, viz: the money in court and the bond given by Wheeler to appeal the original case of *Wheeler* v. *McCurdy* to this court—he should be com-

pelled to make his claim out of the latter, for the reason that plaintiff can make no claim thereon.

*Fourth*—That because the plaintiff acquired a lien on the funds in question, by the filing of his petition on March 21, 1889, and Mr. Grice did not file his answer asserting his claim to this fund until November 8, 1890, the former acquired the first superior lien.

We think all these claims are untenable.

As to the first, section 5224 provides that special master commissioners shall be allowed such fees as are allowed for similar services to other officers. Section 5218 provides that referees shall be allowed such compensation for their services as the court may deem proper and just, which shall be taken as a part of the costs in the case. Where the matter in controversy in a court of equity has been referred to a special master commissioner, it has always been the practice to tax his fees and costs in the case, and courts of equity have always recognized the right and exercised the power, when funds derived from litigation are brought into court, to order the fees and costs of their officers paid out of the funds realized by their exertions, before making distribution thereof to the litigant or litigants entitled thereto.

It is true the master could have refused to file his report until his fees were paid; but he does not, by filing it, waive his right to invoke the power of this court to order it paid out of the fund, nor does he, by such action, elect to look to the personal responsibility of the party against whom the court may, in its discretion, on the final determination of the case, tax such costs.

The second proposition is equally untenable. It is urged that because costs are unknown to the common law, and are created solely by statute, there must exist some statutory authority to enable the court to order their payment out of the funds realized from litigation, when brought into court; and that, as no statutory authority exists authorizing the court to order their payment out of the funds in its hands, the court is powerless to do so; that the only manner in which costs can be collected by legal process in this state is the method pointed out by sections 1318, 1319, 1320, 1321, 1322, 1323 and 1324 of the Revited Statutes, above referred to.

These sections only provide for the collection of costs by means of executions issued for that purpose, and they do not, in any manner, limit or abridge the powers of or forbid courts of equity from ordering costs paid out of funds in court realized from litigation, and section 5351, Revised Statutes, we think, gives us ample power to award and adjudge the costs as we may deem right and equitable.

Besides, it must be borne in mind that the case in which these costs were incurred was a suit in equity, and that it is one of the well recognized and established rules of our jurisprudence that in all such cases the power to tax the costs is vested solely in the chancellor, and rests entirely in his discretion, subject only to review for manifest abuse of such power. It must also be borne in mind that courts of equity have, where funds realized from litigation are brought into court, always exercised the authority to order the payment of the costs of their officers out of the fund realized through their labor and exertions before making distribution of the proceeds to the successful litigants. This power has been exercised time out of mind, and we have never before heard it questioned, and we do not feel disposed to depart from the practice without better reasons than those advanced by counsel in the case at bar.

Courts of equity have always exercised the power to adjudge costs as they deem equitable and right, and when funds realized from litigation are brought into court, they will dispose of the funds, as to costs, in such manner as they deem equitable. This doctrine has been recognized and exercised in the cases following: *Armstrong* v. *McAlpin*, 18 Ohio St., 189; *Bloomingdale* v. *Stein*, 42 Ohio St., 173; *Diehl* v. *Friester*, 37 Ohio St., 473; *Mason* v. *Alexander*, 44 Ohio St., 337; *Wagoner* v. *Loomis*, 37 Ohio St., 581; *Rooney* v. *Railroad Co.*, 18 N. Y., 368.

The third claim is an attempt on the part of the plaintiff to invoke the wellknown power of a court of equity in marshaling liens, to compel a party who has two funds to resort to the one on which the others have and can assert no claim. It is true that the condition of the appeal bond required by section 5231 is to the effect that the party appealing shall abide and perform the orders and judgment of the appellate court, and pay all money, costs and damages which may be required of or awarded against him; but he who seeks equity must do equity. On what principle of equity should we take such action as will, in all probability, require the sureties on this appeal bond to pay the claim of Mr. Grice, when the insolvent appellate in the case of *Wheeler* v. *McCurdy* has funds in court, realized from the litigation, sufficient to satisfy such claim for costs. This power to compel a party to resort to another fund will only be exercised by courts of equity when it will work no injustice to any party connected with the litigation. In the case at bar, we do not think it right or equitable to turn this fund over to the plaintiff, and by such action necessarily compel the sureties on this bond to pay these costs, while funds of the insolvent debtor remain in our hands and subject to our disposal.

There is nothing in the pleadings or evidence to show that these bondsmen have been in any way indemnified by Wheeler from loss, by reason of the responsibility incurred by them in signing the appeal bond.

They are utter strangers to this controversy, and on what principle of equity should we make an order that will, in all probability, compel them to pay this debt of Wheeler's to Grice? We have in this case, no right to compel Grice to resort to the bond claimed to have been given on appeal, unless there are some equitable grounds that the sureties should pay the costs. Story's Equity Jurisprudence, 1st Ed., sections 633, 634, 643, 644 and 645.

And why should we compel Mr. Grice to resort to this bond, when the very funds realized, in a great measure, by his personal labor, are in court and at our disposal? He might have to sue these bondsmen, and only succeed in getting his fees at the end of a long and expensive litigation. The bondsmen might prove insolvent, and he might lose the entire fruits of his labor. Now, would it be equitable or just, to award this money to the plaintiff, who never, either through his means or labor, or in any manner, contributed to the result, and perhaps entail, by our action, on the master commissioner, a litigation that may in the end prove fruitless, to obtain his justly earned compensation? Besides, if there existed equitable grounds why the bondsmen should pay these costs, we could not, in justice to the master, award this money to the plaintiff until he had realized his fees from them.

As to the fourth claim, it is true that Mr. Grice did not file his answer asserting his claim to this fund until November 8, 1890, long after the plaintiff had filed his petition and acquired his lien; but from the statement of counsel, it was never claimed on part of the plaintiff, until

the case came into this court, but that Mr. Grice was entitled to have his costs paid out of this fund, before the plaintiff, under his creditor's bill, could reach any part of it. Besides his equity and right to have this fund applied to the payment of costs, existed, at and prior to the rendition of the judgment rendered in favor of Wheeler against McCurdy, and prior to the time that the plaintiff in this action filed his petition; and it makes no difference when his answer was filed, for when filed, any action taken thereon by the court, relates back to the time when his equitable right first accrued. It is the time his equitable right first accrued, and its superiority in equity, and not the date of filing his answer, that determine the priority of his claim or lien. Whatever equity plaintiff had, was acquired by the filing of the petition, and the equity of the special master commissioner was prior to that, because his equity existed at, and even prior to the time judgment was rendered in the case of *Wheeler* v. *McCurdy*. The ultimate rights of a party in a proceeding of this kind, must be determined on the final distribution of the funds, when they are in the court for that purpose, and the question is: Who has the superior equity?

Now, it cannot be successfully denied but that when the funds realized from this litigation were brought into court, as against Mr. Wheeler, Mr. Grice would have the right to have his fees paid out of the moneys then in court, before any part thereof was paid over to the former. If that is the case, how can this plaintiff, by filing a creditor's bill, destroy the equity of Grice in the funds in the hands of the court? Mr. Wheeler would, in equity and justice, be bound to submit to the payment of Grice's costs out of the fund, before he could use or dispose of it. In what better position is the plaintiff? When a creditor seizes a fund, he seizes it subject to all equities that parties may have in it, at and prior to the filing of his petition, and when all claimants are brought into court, the court will determine which has the superior equity. He cannot, by filing his petition and seizing the funds, exclude persons having equitable interests therein. In this case we think the superior equity is with the master.

We have been asked by the plaintiff to state our finding of facts and conclusions of law thereon, separately. We therefore find:

As conclusions of fact:

*First.* That on the first day of the present term of this court, November 6, 1890, there was due the plaintiff from the defendant, William H. Wheeler, on the judgment set forth in the said petition, the sum of one thousand eight hundred and ten dollars and eighty-five cents ($1,810.85), and that neither of the debtors in said judgment, William H. Wheeler and David M. Richardson, at the date of the filing of said petition in the court below, March 1, 1889, had personal or real property subject to levy upon execution sufficient to satisfy the amount then due the plaintiff upon said judgment.

*Second.* That at the March term of this court, 1889, commenced and holden on the 14th day of March, 1889, the defendant William H. Wheeler recovered a judgment against his co-defendant, William H. McCurdy, in the cause mentioned in the said petition, in the sum of three hundred and eighty-seven dollars and eighty-nine cents ($387.89).

*Thirdly.* That at the said March term, 1889, of this court, the said defendant William H. Wheeler, was ordered and adjudged and decreed to pay the equal one-third part of the costs in the action wherein he recovered the said judgment against the defendant William H. McCurdy, which said order, adjudication and decree was so modified at this term of the

court, by a *nunc pro tunc* entry as of, and for the said March term, 1889, as to be an order, adjudication and decree that the said defendant William H. Wheeler, should pay the equal one-half of the costs in the said action wherein he recovered the judgment against the said William H. McCurdy.

*Fourth.* That the costs in the action wherein the said judgment in favor of the said William H. Wheeler and against the said William H. McCurdy was rendered, was the sum of nine hundred and twenty-five dollars and eighty eight cents ($985.88). That the said William H. Wheeler, defendant, had paid on account of the said costs before the rendition of the order, adjudication and decree aforesaid, the sum of two hundred and twenty-five dollars ($225), and there was due on the first day of this term from him to the defendant William B. Grice, on account of costs and fees taxed in his favor as a special master commissioner in the said action, the sum of two hundred dollars.

*Fifth.* That prior to the filing of the petition in this action, the judgment that the said William H. Wheeler, defendant, recovered against the said William H. McCurdy, defendant, had been, for value received, assigned to the defendant N. W. Evans, to the amount and extent of two hundred and fifty dollars ($250).

And as to the conclusions of law the court finds:

*First.* That the said N. W. Evans is entitled to be paid out of the judgment of William H. Wheeler against William H. McCurdy the said sum of two hundred and fifty dollars.

*Second.* That at the time of filing the petition in this action, the defendant William H. Wheeler, had no interest in the judgment of William H. Wheeler against William H. McCurdy that could be reached by the bill in equity of the plaintiff.

*Third.* That the amount of said judgment of Wheeler against McCurdy in this action, having been brought into this court, and now on deposit with the clerk of this court, amounting to the sum of three hundred and ninety three dollars and seventy-six cents ($393.76), the said clerk should pay and distribute the said sum as follows: (1.) To the defendant N. W. Evans, the said sum of $250. (2.) That the balance of the said sum of $393.76, the said clerk pay to the defendant William G. Grice.

*Fourth.* That the plaintiff should pay the costs of each and all of the said several defendants herein.

*T. C. Anderson*, Attorney for Plaintiff.

*N. W. Evans* and *Duncan Livingstone*, Attorneys for Defendants.

---

## FELLOW SERVANTS—RELIEF ASSOCIATIONS.